**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

LUTHER C. BASHAM,

                Plaintiff,

v.                                                      CIVIL ACTION NO. 5:06-cv-00604

CORRECTIONAL MEDICAL SERVICES,
INC., et al.,

                Defendants.

**MEMORANDUM OPINION**

Before the Court are the Proposed Findings and Recommendation of United States Magistrate Judge Mary E. Stanley, dated August 10, 2006 [Docket 6], and Plaintiff's objections to the findings and recommendation [Docket 10]. For the reasons stated below, the Court overrules Plaintiff's objections, and adopts the magistrate judge's recommendation.[1]

*I. BACKGROUND*

This case arises out of an amended complaint filed by Plaintiff, an inmate at Mount Olive Correctional Complex (MOCC) in Mount Olive, West Virginia. Plaintiff alleges that he received improper medical treatment resulting in the amputation of his lower left leg. By Standing Order entered on August 1, 2006, and filed in this case on August 4, 2006, this action was referred to Magistrate Judge Stanley for submission of proposed findings and a recommendation (PF&R). Magistrate Judge Stanley filed a PF&R on August 10, 2006 [Docket 6]. In that filing, pursuant to

---

[1] The Court will address the magistrate judge's most recent Proposed Findings and Recommendation [Docket 77] once the parties have been given an opportunity to object.

28 U.S.C. § 1915A, the magistrate judge recommended that this Court dismiss defendants Governor Joe Manchin, West Virginia Division of Corrections Commissioner Jim Rubenstein, MOCC Warden Thomas McBride, and MOCC Associate Warden of Operations Tim Whittington from this action because the amended complaint fails to state a claim upon which relief may be granted as to those defendants. Furthermore, Magistrate Judge Stanley recommended that Plaintiff's claims for money damages against the State of West Virginia and its Division of Corrections be dismissed because those entities are immune from such relief. On August 24 and September 22, 2006, Plaintiff filed timely objections to the PF&R.

According to Plaintiff's amended complaint, the relevant facts which gave rise to this suit took place from September 2004 to August 2005. Plaintiff alleges that in September 2004, he visited Dr. Ruben, an orthopedic surgeon at Montgomery General Hospital, because his left foot and ankle prevented him from walking. Dr. Ruben diagnosed Plaintiff with an acute case of arthritis, suggested an operation to alleviate the discomfort, and gave Plaintiff pain medication. Plaintiff alleges that he advised defendants Mark Fordyce, former medical administrator at MOCC, and Steve Myers, former physician's assistant at MOCC, that he wanted the surgery. For reasons unclear in the record, Dr. Ruben never performed the surgery. Plaintiff states that his foot and ankle never improved, and this caused him to complain further to defendants P.A. Myers, Dr. Donald Holmes, former medical doctor at MOCC, Dr. Louis Almose, former medical doctor at MOCC, and Dr. Doreen Planck, medical doctor at MOCC. As a result of his complaints, Plaintiff received an increase in his pain medication.

Plaintiff asserts that at some point in February 2005, he stood from his wheelchair, heard a "pop," and felt a sharp pain in his left leg. Following this incident, Plaintiff continued to complain

to the medical unit and was sent to see P.A. Myers on several different occasions, where he was given more medication. Plaintiff alleges that his foot began to turn inward in an unnatural position and became severely swollen.

On April 11, 2005, after complaining to the acting unit manager about the pain, Plaintiff was again taken to P.A. Myers who took an x-ray of Plaintiff's foot and sent Plaintiff to the emergency room where he was given a splint.[2]  On April 19, 2005, Plaintiff was called to the medical unit by P.A. Myers and told that after consulting with Dr. Ruben, it would be best to amputate Plaintiff's lower left leg below the knee rather than repair it.  Plaintiff was then given a second opinion that confirmed his leg should be amputated.  X-rays revealed that Plaintiff had "numerous broken bones as well as shattered bones in his left ankle."  (Docket 5 at 14.)  Plaintiff was admitted to Charleston Area Medical Center (CAMC) on June 15, 2005, and had the surgery on June 18.

Following the amputation, there was some debate over how much and what type of therapy Plaintiff would be given.  Plaintiff alleges that in late July or early August 2005, he saw defendant Warden McBride and complained to him about his "rehabilitation–physical therapy."  The warden allegedly responded by saying that Plaintiff would have to talk to the people in the medical unit because he was not responsible for Plaintiff's medical care.  Ultimately, Plaintiff ended up doing a "self imposed" program in the MOCC infirmary with LPN Shelvie Chapman, a three day rehabilitation program at Montgomery General Hospital, and three one hour sessions at CAMC Sports Medicine Center.

Pursuant to 42 U.S.C. § 1983, Plaintiff filed his complaint on August 4, 2006, and his amended complaint on August 8, 2006, alleging that the defendants failed to render adequate

---

[2] According to Plaintiff, prior to April 2005, no x-rays of his leg were ever taken.

medical care, which resulted in the amputation of his lower left leg and that the defendants failed to provide him with adequate "rehabilitation-physical therapy."

## *II. APPLICABLE LAW*

This Court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). However, the Court is not required to review, under a *de novo* or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed. *Thomas v. Arn*, 474 U.S. 140, 150 (1985). In addition, this Court need not conduct a *de novo* review when a petitioner "makes general and conclusory objections that do not direct the Court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).

When reviewing the portions of the PF&R *de novo*, the Court will consider the fact that Plaintiff is acting *pro se*, and his pleadings will be accorded liberal construction. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978). Under this liberal standard, however, a complaint may still be dismissed if "after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff can prove no set of facts in support of his claim entitling him to relief." *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002).

To establish an Eighth Amendment cause of action against a prison official for deliberate indifference to a serious medical need under 42 U.S.C. § 1983, Plaintiff must satisfy a two-part test. This test consists of an objective and subjective component. First, Plaintiff must prove that the alleged deprivation of medical care was, "objectively, 'sufficiently serious.'" *Farmer v. Brennan*,

4

511 U.S. 825, 834 (1994) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). Next, Plaintiff must show that the prison official had "a sufficiently culpable state of mind." *Wilson,* 501 U.S. at 302-03. This subjective prong requires the official to know of and disregard "an excessive risk to inmate health . . . ." *Farmer*, 511 U.S. at 837. To determine whether the official acted with the requisite degree of culpability, the official must be both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* Neither mere malpractice, *Estelle*, 429 U.S. at 105-06, nor mere negligence in diagnosis state an Eighth Amendment claim. *Sosebee v. Murphy*, 797 F.2d 179, 181 (4th Cir. 1986). Rather, to be actionable, the treatment, or lack thereof, "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990).

A supervisory prison official "cannot be held liable for the medical decisions made by his staff unless he independently demonstrated deliberate indifference." *Coppage v. Mann*, 906 F. Supp. 1025, 1043 (E.D. Va. 1995). This means that a supervisory official may only be liable for the constitutional violations of medical subordinates where the plaintiff shows: 1) that the supervisor was actively or constructively aware of a pervasive, unreasonable risk of harm from a specified source; 2) the supervisor was deliberately indifferent to that risk; and 3) that there exists an affirmative causal link between the supervisor's inaction and a constitutional injury. *See Carter v. Morris*, 164 F.3d 215, 221 (4th Cir. 1999).

### III. DISCUSSION

In Plaintiff's first set of objections, he only objects "in part and pertaining to the dismissal of defendant [Commissioner] Rubenstein and defendant [Warden] McBride . . . ." (Docket 10 at 1.)

In the second filing, Plaintiff reiterates his objections to defendants Rubenstein and McBride, and further objects to the dismissal of the damages claim against the State of West Virginia and the Division of Corrections. Plaintiff failed to object to the magistrate judge's recommendation to dismiss defendant Manchin and defendant Whittington. Therefore, the Court **ADOPTS** Magistrate Judge Stanley's recommendation that the Court find that Plaintiff's amended complaint fails to state a claim upon which relief can be granted against defendants Manchin and Whittington, and **DISMISSES** them from this action.

With regard to Rubenstein and McBride, Plaintiff initially objects on the grounds that these two defendants should not be dismissed because he sued them in their individual capacity and are not protected by the Eleventh Amendment. However, Magistrate Judge Stanley did not recommend dismissal of these defendants on that basis. Rather, she recommended they be dismissed because Plaintiff failed to allege facts sufficient to establish a cause of action against them under a theory of supervisor liability. Thus, Plaintiff's first objection is **OVERRULED**.

Plaintiff then objects to the legal grounds discussed in the PF&R. He argues that defendants Rubenstein and McBride should not be dismissed for failure to state a claim of supervisor liability against them because the allegations in his amended complaint, namely paragraph five of the "Statement of Claim," sufficiently state a cause of action for "deliberate indifference" and it is clear that these defendants had knowledge of his medical problems and did nothing to assist him.

  *A. Defendant Commissioner Rubenstein*

Contrary to Plaintiff's objection, Commissioner Rubenstein's name does not appear in paragraph five of the "Statement of Claim." In fact, Plaintiff only makes reference to Rubenstein on one occasion in his amended complaint – in the section entitled "Parties." There are no facts

alleged in the amended complaint to suggest that defendant Rubenstein had any knowledge of Plaintiff's condition or was deliberately indifferent to his condition and the risk of future harm. Moreover, there are no allegations that there was a causal link between Rubenstein's inaction and Plaintiff's amputation. Plaintiff cannot state a cause of action against the Commissioner of the Division of Corrections merely because he oversees its daily operation. Simply alleging that Rubenstein failed to oversee the operations of the West Virginia Division of Corrections does not establish that he acted with the requisite degree of culpability, and therefore does not meet the standard to prove deliberate indifference of a supervisory prison official. Plaintiff's objection as it pertains to defendant Commissioner Rubenstein is **OVERRULED**.

### B. *Defendant Warden McBride*

In order to persuade the Court that he states a claim for deliberate indifference against Warden McBride, Plaintiff directs the Court's attention to the portion of his allegations where he states that McBride said Plaintiff's medical care was not his responsibility. Plaintiff alleges that in late July or early August 2005, he complained to McBride about Plaintiff's "rehabilitation-physical therapy," and the warden told him that he "would have to talk to the people in the Medical Unit about his rehabilitation-physical therapy and that he (defendant McBride) was not responsible for plaintiffs [sic] medical care." (Docket 5 at 17.) Thus, according to Plaintiff's own admissions, this incident took place after the alleged improper medical treatment that led to Plaintiff's leg being amputated in June 2005. Furthermore, there are no allegations in the amended complaint that McBride was ever put on notice of Plaintiff's medical condition prior to his amputation. Therefore, Plaintiff has alleged no facts which would entitle him to relief from Warden McBride for the alleged

7

improper medical treatment that resulted in the amputation of his left leg, and Plaintiff's objection is **OVERRULED**.[3]

Although not presented in his "Statement of Claim," it is evident from the factual allegations and the request for relief that Plaintiff attempts to state a claim against the warden for his failure to provide adequate post-operation medical care in violation of the Eighth Amendment. However, even if these allegations are true, they would not state a valid claim because the alleged deprivation of medical care was not sufficiently serious.

"Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement." *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003). "To demonstrate such an extreme deprivation, a prisoner must allege a serious or significant physical or emotional injury resulting from the challenged conditions or demonstrate a substantial risk of such serious harm resulting from the prisoner's exposure to the challenged conditions." *Id.* (internal quotation marks and citation omitted); *see also Odom v. S.C. Dep't of Corr.*, 349 F.3d 765, 770 (4th Cir. 2003).[4]

---

[3] Plaintiff also refers to exhibits attached to his objections. Even if the Court were to consider these exhibits under 28 U.S.C. § 1915, there still remains no arguable legal or factual basis upon which Plaintiff's claim should go forward because those exhibits are dated after the alleged improper medical care and immediately before Plaintiff's amputation. This evidence confirms that the warden had no knowledge of Plaintiff's condition in the months before the amputation when Plaintiff alleges the deliberately indifferent behavior occurred.

[4] Other circuits have articulated the objective prong as being satisfied when the deprivation is such that "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *See, e.g., Cox v. District of Columbia*, 834 F. Supp. 439, 441 (D.D.C. 1992); *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999); *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997).

By Plaintiff's own admissions, he was provided rehabilitation and physical therapy on several different occasions. While the frequency, duration, and provider of the therapy may not have been what Plaintiff desired, "the prohibition against the infliction of cruel and unusual punishment 'does not mandate comfortable prisons, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation.'" *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (quoting *Wilson*, 501 U.S. at 298). Simply put, to satisfy the standard, Plaintiff must have alleged an extreme deprivation that demonstrated substantial risk of serious harm. He has not done so.

In the amended complaint, Plaintiff avers that he received rehabilitation and physical therapy through a therapy program at the MOCC infirmary that was administered by LPN Carpenter, which consisted of various exercises to strengthen the muscles in his right leg. Additionally, Plaintiff admits that he eventually began a three day rehabilitation program at Montgomery General Hospital, and after he complained, was permitted to attend therapy at CAMC Sports Medicine Center where he received "proper and supervised physical therapy." (Docket 5 at 17-18.) While these accommodations may fall short of what Plaintiff thinks he is entitled to, they do not meet the "extreme deprivation" required to state an Eighth Amendment claim.[5] Further, Plaintiff has not alleged any physical injury that would result from the current rehabilitation regimen. *See Warren v. Missouri*, 995 F.2d 130, 131 (8th Cir. 1993) (since physical therapy would not have improved prisoner's injury, prisoner did not have a serious medical need for such treatment). Accordingly,

---

[5] "[P]laintiff may not agree with the course of treatment and frequency of care as it pertains to physical therapy . . ., [but] he has not stated a claim. Mere disagreements with physicians over appropriate medical care are not actionable under § 1983 without a showing of exceptional circumstances." *Staples v. Va. Dep't of Corr.*, 904 F. Supp. 487, 493 (E.D. Va. 1995) (citing *Estelle*, 429 U.S. at 106).

Plaintiff cannot state a claim against McBride for failing to provide adequate "rehabilitation-physical therapy" after the amputation, and Plaintiff's objection is **OVERRULED**.

        *C.*      *The State of West Virginia and the West Virginia Division of Corrections*

Finally, in the objections filed on September 22, 2006, Plaintiff objects to the magistrate judge's ruling dismissing his damages claim against the State of West Virginia and its Division of Corrections. In this filing, Plaintiff merely recites verbatim his original objections to defendants Rubenstein and McBride, with the exception of citing *Sealock v. Colorado*, 218 F.3d 1205 (10th Cir. 2000) to argue that in *Sealock*, the State of Colorado, the Colorado Department of Corrections, and its governor were named as defendants in a § 1983 claim and therefore the State of West Virginia and the Division of Corrections should not be dismissed. While it is true that the state, the governor, and the department of corrections were named defendants in *Sealock*, the district court granted summary judgment in their favor, and the appellate court did not analyze that aspect of the district court's ruling in its opinion. Therefore, *Sealock* does not support Plaintiff's argument. As such, because the Eleventh Amendment prohibits suits against a state or a state agency for money damages, *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989), Plaintiff's objection to Magistrate Judge Stanley's finding that the money damages claim against the State of West Virginia and its Division of Corrections be dismissed is hereby **OVERRULED**.[6]

### IV. CONCLUSION

For the reasons discussed above, the Court adopts the recommendation contained in Magistrate Stanley's PF&R [Docket 6], and **DISMISSES** defendants Manchin, Rubenstein,

---

[6] The Court will refrain from ruling on the State of West Virginia and the Division of Corrections' motion to dismiss [Docket 11] pending Plaintiff's objections to Magistrate Judge Stanley's PF&R entered on May 8, 2007 [Docket 77].

10

McBride, and Whittington. Additionally, Plaintiff's claims for damages against the State of West Virginia and the West Virginia Division of Corrections are **DISMISSED**. A separate Order will be entered this day implementing the rulings contained herein.

       ENTER:    May 18, 2007

_____
THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE